UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YAROSLAV SKLYARSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13 C 859 |
| | ) | |
| HARVARD MAINTENANCE, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

*Pro se* Plaintiff Yaroslav Sklyarsky ("Sklyarsky"), brought this action against his former employer Defendant Harvard Maintenance Inc. ("Harvard") alleging discrimination based on national origin and retaliation in violation of Title VII and 42 U.S.C. § 1981. Sklyarsky moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Harvard cross-filed for summary judgment. For the following reasons, Harvard's motion is granted, and Sklyarsky's motion is denied. Harvard's motion for sanctions is denied.

### BACKGROUND

The following facts are derived from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Rule 56.1 ("Local Rule 56.1").

The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion, or assertion unsupported by the evidence in the record.

Sklyarsky is a male United States citizen of Ukrainian national origin. Sklyarsky began working as a custodian with ABM Janitorial Service in Chicago, Illinois in 1999, exclusively working at the 300 S. Riverside Plaza building in Chicago, Illinois. After his building's contract for janitorial services was transferred to Harvard, Sklyarsky began employment with Harvard on April 1, 2010. Harvard is a corporation which provides janitorial services to owners and operators of commercial buildings. Harvard's janitorial employees are represented by the Service Employees International Union Local 1, which negotiated a Standard Agreement Contractors contract ("Union Agreement") with Harvard. The Union Agreement governs wages, hours, working conditions and other conditions of employment, including discipline. The Union Agreement sets forth the requirement that all discipline must be accorded in a progressive manner. Harvard is required to abide by the contractual terms of the Union Agreement in the treatment of their employees. Aside from the Union Agreement, Harvard maintained their own set of Company Work Rules which categorized disciplinary offenses into two separate groups based on their severity; Major and Minor Rule Violations. Sklyarsky received a copy of these rules and signed the Company Work Rules prior to beginning with Harvard in 2010.

On August 2, 2010, Sklyarsky received his first written warning from his immediate supervisor Violeta Stosic ("Stosic") for insubordination. Under Harvard's Company Work Rules, insubordination is a Major Rule Violation. Stosic sent a letter to Harvard's Management on the same day of the infraction detailing Sklyarsky's opposition to being assigned extra work when the janitorial staffing was short, due to other individuals calling off work. Sklyarsky threatened to sue Stosic for assigning him more work. Following Stosic's written reprimand, Sklyarsky filed a complaint on August 11, 2010, with the U.S. Equal Employment Opportunity Commission ("EEOC") claiming discrimination based on his national origin.

On October 28, 2011, Stosic issued a secondary written warning to Sklyarsky for insubordination. Harvard's written incident report of the October 2011 encounter between Stosic and Sklyarsky describes how Sklyarsky wanted to take a picture of an employee seniority list placed on the wall of Harvard's office. After being warned that he was not allowed to take a photograph, Sklyarsky still proceeded to take a picture of the list. After the picture was taken, a brief exchange between Stocis and Sklyarsky ensued and Sklyarsky was issued a written warning for insubordination. Sklyarsky filed a grievance with the Union concerning the written warning, but the Union declined to take the dispute to arbitration. Sklyarsky filed a retaliation charge with the EEOC on December 7, 2011 because he felt that he was being retaliated against for filing the earlier August 2010 discrimination claim with the EEOC. On January 3, 2012, the EEOC issued a Notice of Right to Sue stating that they were

unable to determine that a violation of Title VII occurred as described in the August 2010 discrimination claim.

John Karpierz ("Karpierz") took over as Sklyarsky's supervisor in February 2012. At some point soon after Karpierz assumed his position as a manager, Sklyarsky attests that Karpierz laughed at his mixed use of Polish and Ukrainian. On March 22, 2012, Sklyarsky was issued a written warning for inadequate job performance by Karpierz. The written warning specifies that Sklyarsky did not adequately clean the desks assigned to him. Sklyarsky tried to remedy the inadequate cleaning, but his attempt was deemed to be poor and a secondary janitor had to finish the job. Under Harvard's rules of conduct, poor work performance is a Minor Rule Violation. Shortly after his reprimand on March 25, 2012, Sklyarsky sent a "Complaint about Discriminatory Actions" to Harvard's Human Resource Manager Tatiana Domliaja ("Domliaja"). In the complaint Sklyarsky detailed his distaste for Karpierz, his ineffective management style, and also disclosed that he felt as though he was a victim of discrimination. Sklyarsky filed a grievance with the Union, concerning the written warning; however the Union declined to take the dispute to arbitration.

On June 4, 2012, another incident occurred where Karpierz imposed a one-day suspension for Sklyarsky's failure to adequately clean the areas assigned to him and insubordination. The Harvard incident report details that Sklyarsky failed to clean multiple areas that he was assigned, which required Karpierz to finish the work

himself.  When Sklyarsky was confronted with the need to timely finish his assigned responsibilities, or alternatively inform the supervisor ahead of time of his inability to complete the job, Sklyarsky stated that he was being discriminated against because he was Ukrainian.  Harvard's incident report states that Karpierz informed Sklyarsky that he did not care if he were "Blue, Green, or Purple," all he wanted was cooperation.  In conjunction with Sklyarsky receiving a written notification of a suspension, he signed a Last Chance Agreement on June 8, 2012, specifying "[t]hat the employee acknowledges and understands that if he demonstrates any further job performance related deficiencies or displays poor conduct within twelve (12) months of the date of this Last Chance Agreement, his employment with the [Harvard] will be terminated." Sklyarsky filed a grievance with the Union, concerning the suspension; however the Union declined to take the dispute to arbitration.  Sklyarsky filed a discrimination and retaliation claim with the EEOC on July 2, 2012.

On January 2, 2013, Karpierz issued a secondary suspension to Sklyarsky for participating in personal conversations with another employee during work hours. Both Sklyarsky and the other employee, Andres Kusper ("Kusper"), were disciplined. On January 7, 2013, Sklyarsky and the Union were notified in writing by Harvard's General Manager, Jim Postelnik, that Sklyarsky's employment would be terminated on January 18, 2013, pursuant to the terms of the Union Agreement, for a history of poor job performance and other disciplinary infractions culminating with the events that occurred on January 2, 2013.  Sklyarsky filed a grievance concerning this

suspension with the Union, which declined to take the dispute to arbitration. On January 30, 2013, the EEOC issued a Notice of Right to Sue concerning Sklyarsky's July 2, 2012 discrimination claim.

On April 17, 2013, Sklyarsky filed another charge of discrimination and retaliation with the EEOC concerning his termination from Harvard. On April 30, 2013, the EEOC issued a Notice of Right to Sue concerning Sklyarsky's termination claim.

On February 15, 2013, Sklyarsky filed a two-count complaint alleging: discrimination in violation of 42 U.S.C. § 1981 (Count 1); and discrimination in violation of Title VII (Count 2). On July 12, 2013, Harvard filed an abuse of judicial process counterclaim under Federal Rule of Civil Procedure 11 ("Rule 11"). On February 6, 2014, Sklyarsky moved for summary judgment under Federal Rule of Civil Procedure 56. Soon after, on April 9, 2014, Harvard moved for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to

show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. *Id.* The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; he must go beyond the pleadings and support his contentions with proper documentary evidence. *Id.* The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court bears "a special responsibility" to construe a *pro se* litigant's complaints liberally. *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996). It is the "well-established duty of the trial court to ensure that the claims of a *pro se* litigant are given a fair and meaningful consideration." *Palmer v. City of Decatur, Ill.,* 814 F.2d 426, 428–29 (7th Cir. 1987). However,"[a] lawsuit is not a game of hide the peanut." *Greer v. Board of Educ. City of Chicago, Ill.*, 267 F.3d 723, 728 (7th Cir. 2001). Employment discrimination cases are very fact-intensive, and district courts are not required under our "adversary system to scour the record looking for factual disputes . . ." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994).

# DISCUSSION

Sklyarsky alleges in his complaint that Harvard violated Title VII and 42 U.S.C. § 1981 over the course of his employment. Sklyarsky's cryptic complaint alleges discrimination in violation of 42 U.S.C. § 1981 in Count 1. Thereafter, Sklyarsky incorporates his Title VII discrimination and retaliation claims into a single count, Count 2. The Court will initially review the merits of Sklyarsky's Title VII claims then proceed with his 42 U.S.C. § 1981 claim. Finally, the Court will address Harvard's Rule 11 abuse of process claim.

At the onset of our analysis, the Court notes that Sklyarsky intertwines the overwhelming majority of his disciplinary citations with the permissibility of those censured actions under his Union Agreement. Sklyarsky's February 4, 2013, Complaint specifically designates Title VII and 42 U.S.C. § 1981 as the only causes of action he seeks relief under, as evidenced in its title, "Complaint of Employment Discrimination." The Court determines that Sklyarsky has not brought a separate and independent state law claim for wrongful termination. Therefore, for the purpose of resolving the instant motions for summary judgment, the Court will rely on the Union Agreement only in the context of gauging the propriety of the disciplinary procedures employed.

## I. Sklyarsky's Motion to Strike

As a preliminary matter, Sklyarsky moves to strike numerous portions of Harvard's supporting evidence and their motion for summary judgment pursuant to Local Rule 56.1(b). Local Rule 56.1(b) "is designed, in part, to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). Local Rule 56.1(b)(3)(A) requires the nonmoving party to respond to each numbered paragraph in the moving party's statement. Additionally, where the nonmoving party disagrees with a statement they must provide a specific reference to an affidavit, part of the record or other supporting material they are relying on as the basis for their disagreement. Because motions to strike can be used as delay tactics, they are generally not a favored part of motion practice. *United States v. 416.81 Acres of Land,* 514 F.2d 627, 631 (7th Cir. 1975).

Sklyarsky perplexingly argues that Harvard's cross-motion for summary judgment has no legal basis and is unnecessarily duplicative, and therefore it should be stricken. Sklyarsky also argues that Harvard's response to his Statement of Material Fact is not in accordance with Local Rule 56.1(b). The Court deems Harvard's cross-motion for summary judgment to be timely and properly filed under Local Rule 56.1. Upon examination of Harvard's response to Sklyarsky's Statement of Material Fact, Harvard adequately responds to each numbered paragraph as

required by Local Rule 56.1 (b). Where Harvard disagrees with a statement, they sufficiently supply the necessary citation to the record, as dictated by Local Rule 56.1. The Court denies Sklyarsky's outstanding motions to strike.

## II. Discrimination in Violation of Title VII

### A. National Origin Discrimination

Title VII prohibits employers from "discriminat [ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Sklyarsky alleges that he experienced discrimination on the basis of his national origin. Sklyarsky may establish his discrimination claim under Title VII by either the direct or indirect method. *Silverman v. Board of Educ. of the City of Chic.*, 637 F.3d 729, 733 (7th Cir. 2011). Sklyarsky briefly notes that he can establish his claim under the direct method, however he mainly relies on the indirect method to establish the discriminatory intent of Harvard's employment actions. The Court will consider the evidence under both the direct and indirect methods of proof.

### 1. Direct Method

Under the direct method the court considers direct and circumstantial evidence of discrimination. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). "Direct evidence is evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption . . . stated differently, direct evidence essentially requires an admission by the decision-maker

were based on the prohibited animus." *Hossark v. Floor Covering Ass'n of Joliet, Inc.*, 492 F.3d 853, 861 (7th Cir. 2007). Direct evidence of a defendant admitting discrimination is rare, so most cases are proven by circumstantial evidence. *Id*. "Circumstantial evidence, unlike direct evidence, need not directly demonstrate discriminatory intent, but rather it allows a jury to infer discrimination by the decision maker for maker for suspicious words or action." *Id*. at 862.

Under the direct method approach, Sklyarsky has failed to provide sufficient direct or circumstantial evidence to support his contention that Harvard discriminated against him because of his national origin. The only evidence in the record that vaguely mentions Sklyarsky's Ukrainian origin is the singular comment made by Karpierz in which he laughed about Sklyarsky's mixed use of Polish and Ukrainian. Any discriminatory intent which can be gleaned from this limited comment is countered by Karpiez's later comment indicating that he does not care if Sklyarsky was "Blue, Green, or Purple," all he wanted was cooperation. This single incident, where Sklyarsky's national origin was alluded to does not support an inference of national origin discrimination. Otherwise, the record is devoid of any direct or circumstantial evidence suggesting that Harvard: (1) issued warnings, (2) suspended him, or (3) terminated him based on his Ukrainian descent. Sklyarsky has failed to establish a genuine issue of material fact under the direct method, therefore Sklyarsky must proceed under the indirect method.

## 2. Indirect Evidence

Sklyarsky may prove his claim under the indirect method by establishing: (1) he is a member of a protected class; (2) his job performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) at least one similarly situated employee, not in his protected class, was treated more favorably. *See Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599-00 (7th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If these elements are established, discrimination is inferred and the burden of production shifts to the defendants to raise a legitimate, non-discriminatory reason for the adverse employment action. *Naik*, 627 F.3d at 600. Once a legitimate reason is offered, the inference of discrimination is rebutted, and the plaintiff must establish that the offered reason is a pretext for unlawful discrimination. *Id*.

Sklyarsky claims that Harvard impermissibly: (1) issued a written warning on October 28, 2011 for insubordination toward an assistant supervisor; (2) issued a written warning on March 22, 2012 for inadequate job performance; (3) imposed a one-day suspension on June 8, 2012 for insubordination and poor job performance and required his assent to the Last Chance Agreement; and (4) imposed an additional suspension on January 3, 2013 for prohibited conversations during work hours. While Sklyarsky was serving his suspension, he was terminated on January 18, 2013. The parties contest the second and forth elements of Sklyarsky's prima facie case, whether Sklyarsky was meeting Harvard's legitimate job expectations and whether he was

treated less favorably than similarly situated employees outside of his protected class. The Court will address each of the contested issues in turn.

### a. Legitimate Job Expectations

Sklyarsky seems to contend that his Union Agreement permits him to perform all the activities that he was reprimanded for. Since he believed his conduct was permitted, Sklyarsky reasons that an inference can be made that the disciplinary actions taken against him were because of his Ukrainian origin. Sklyarsky's reasoning is flawed. Aside from Sklyarsky's unsupported accusation of discrimination, Sklyarsky does not specifically refute that his conduct violated Harvard's Company Work Rules and that his termination occurred as the result of these violations, which procedurally were carried out in accordance with the Union Agreement. After multiple written warnings where levied, a final definitive warning of termination was given in the form of a Last Chance Agreement. The Last Chance Agreement fits into the rubric of progressive punishment allowed under the Union Agreement. Furthermore, Harvard notified Sklyarsky's Union of its contemplation of terminating Sklyarsky due to his repeated disciplinary infractions, which is required under the Union Agreement. Therefore, Harvard's methodology of reprimanding Sklyarsky was procedurally sound under the Union Agreement.

Harvard points to Sklyarsky's record of continuous problematic behavior as support for their contention that he was not meeting their legitimate job expectations. During the course of Sklyarsky's employment with Harvard, he amassed the dubious

disciplinary record of a singular verbal warning, three written warnings, and two suspensions, the last ending in his termination. Domlija, Harvard's Human Resource Manager confirmed that no other employee had amassed such an extensive disciplinary record over a comparable employment time period.

Sklyarsky's punishment increased in severity with each progressive performance censure, ultimately culminating in his termination in January 2013. With this in mind the Court will determine whether Sklyarsky was meeting Harvard's legitimate job expectations at the time of his discharge. *Burmmett v. Lee Enterproises, Inc.*, 284 F.3d 742, 745 (7th Cir. 2002). In June 2012, after receiving his first suspension, Sklyarsky signed a Last Chance Agreement on June 8, 2012 specifying "[t]hat the employee acknowledges and understands that if he demonstrates any further job performance related deficiencies or displays poor conduct within twelve (12) months of the date of this Last Chance Agreement, his employment with the [Harvard] will be terminated." Subsequently on January 2, 2013, Karpierz issued a secondary suspension to Sklyarsky for conducting personal conversations with another employee during work hours. Sklyarsky was aware that his employment with Harvard was tenuous, after signing the aptly named, Last Chance Agreement, and Sklyarsky continued with his unacceptable behavior. Pursuant to the terms of the Last Chance Agreement, Sklyarsky was terminated. Sklyarsky was terminated due to his violation of Harvard's Company Work Rules, and his punishment was procedurally executed in accordance with the terms of the Union Agreement. "This Court will 'not

sit as a super-personnel department that reexamines an entity's business decision' in cases where discrimination is alleged." *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993) (citing *Dale v. Chicago Tribune Company*, 797 F.2d 458, 464 (7th Cir. 1986)).

The Court finds that Sklyarsky did not meet Harvard's legitimate job expectations at the time of his termination.

### b. Similarly Situated Individuals

Even if we were to assume that Sklyarsky had sufficiently established that he had met Harvard's legitimate job expectations at the time of his termination, he nevertheless fails to identify a similarly situated employee who was treated more favorably. To determine if employees are similarly situated, the court must find that there are "sufficient commonalities on key variables between the plaintiff and the would be-comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007). Although the similarly situated inquiry is a "flexible, common sense one," *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007), the comparators must be similar enough that any differences in their treatment cannot be attributed to other variables. *See Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) (noting that the difference in performance history would dilute an effective employee comparison in an age discrimination case). "If an employer takes an action against one employee in a

protected class but not another outside that class, one can infer discrimination." *Coleman v. Donahoe,* 667 F.3d 835, 847 (7th Cir. 2012). The relevant inquiry focuses on whether the employer subjected two different classes of employees differently. *Id.*

Sklyarsky has provided the name of two individuals, Kusper and Franciszek Zaremba ("Zaremba"), that he asserts was treated more favorably than him. Sklyarsky has not provided sufficient information concerning Kusper or Zaremba to render an adequate comparison. The record is devoid of any further information concerning Zaremba, who was initially included in Sklyarsky's EEOC complaints as a similarly situated individual. As for Kusper, the record does not indicate his position or his disciplinary history. Although Kusper was issued a written warning for engaging in the same conduct Sklyarsky was eventually terminated for, this fact only tells half the story. The progressive disciplinary system that Harvard adheres to increases the severity of punishment after every disciplinary action. The final suspension which led to Sklyarsky's termination was his fourth disciplinary action. Without Kusper's prior disciplinary record or his position it is impossible to gauge the appropriateness of his written warning, for the purposes of assessing if he is similarly situated. *See Senske*, 588 F.3d at 510 (specifying variables of distinction between similarly situated employees include positions, performance or supervisors).

Harvard has provided evidence that they have disciplined other non-Ukrainian employees for the same level of offenses Sklyarsky was disciplined for. During the twelve months preceding Sklyarsky's termination Harvard: (1) terminated twenty five

non-Ukrainian employees for the same category of offense Sklyarsky was terminated for; (2) issued verbal warnings to four non-Ukrainian employees for the same category of offense Sklyarsky was issued a verbal warning for; (3) issued written warnings to two non-Ukrainian employees for the same category of offense Sklyarsky was issued a written warning for; and (4) issued Last Chance Agreements to two non-Ukrainian employees for the same category of offense Sklyarsky was issued a Last Chance Agreement. Sklyarsky has failed to show one comparable similarly situated employee that was treated more favorably than he was.

Sklyarsky has not met his burden of showing that he met Harvard's legitimate job expectations or that similarly situated individual's received more favorable treatment. Because Sklyarsky has not established a prima facie case for discrimination, it is unnecessary for us to reach the issue of pretext. Harvard's motion for summary judgment is granted. Sklyarsky's motion for summary judgment is denied.

### B. Retaliation

Sklyarsky alleges that he was retaliated against after filing his initial EEOC discrimination charge and four subsequent EEOC charges over the course of his employment. Sklyarsky alleges that each disciplinary action that was assessed after his August 2010 discrimination charge is attributed to Harvard's illegal retaliation.

The anti-retaliation provision of Title VII prohibits an employer from taking an adverse employment action against an employee because he filed an employment

discrimination charge. *See* 42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 62 (2006). As with discrimination claims under Title VII, retaliation may be proven through either the direct or indirect method. *See Weber v. Univs. Research Ass'n, Inc.,* 621 F.3d 589, 592 (7th Cir. 2010). Sklyarsky relies on the direct method to establish his retaliation claim.

### 1. Direct Method

To prove retaliation through the direct method, Sklyarsky must establish a prima facie case of retaliation by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) there is a causal connection between the two. *Leitgen v. Franciscan Skemp Healthcare, Inc*. 630 F.3d 668, 673 (7th Cir. 2011). If Sklyarsky satisfies these elements the burden shifts to the Harvard to produce a legitimate, non-retaliatory reason for its actions. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009)*; Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007). Harvard argues that Sklyarsky has failed to specify a proper adverse employment action and additionally fails to produce sufficient evidence to establish that there is a casual connection between his engaging in a protected activity and any subsequent adverse action.

### a. Adverse Action

The standard for what constitutes an adverse employment action is more flexible in a retaliation claim than in a discrimination claim. *Burlington* , 548 U.S. at

69; *Lewis v. City of Chi. Police Dept.*, 590 F.3d 427, 437 (7th Cir. 2009). In the context of a retaliation claim, adverse employment actions are not limited to actions that affect the terms and conditions of employment. *Burlington,* 548 U.S. at 69. Instead, courts evaluate retaliation claims using an objective standard. *Id.* Therefore retaliatory conduct is actionable if the "challenged actions are ones that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Burlington* , 548 U.S. at 67; *Henry v. Milwaukee Cty.*, 539 F.3d 573, 586 (7th Cir. 2008).

Sklyarsky asserts that all disciplinary actions taken by his two supervisors stretching back to 2010 should be considered for the purposes of proving the adverse employment action requirement of his retaliation claim. Sklyarsky interprets the inclusive adverse employment action requirement under a Title VII retaliation claim too broadly. To sustain a retaliation claim, Sklyarsky must have engaged in some protected activity, prior to an employer's adverse actions taken in retaliation for exercising his right to engage in protected activity. *See Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) (employer must have actual knowledge of the protected activity in order for its decisions to be retaliatory).

Although Sklyarsky's earliest EEOC filing was on August 11, 2010, the evidence does not show that anyone at Harvard, let alone his supervisors who imposed the sanctions, knew about the EEOC filing or any allegations of discrimination. It cannot be assumed that Stosic was clairvoyant about Sklyarsky's subjective feelings

of discrimination when she assessed the written warning on October 28, 2011. The same is true for Sklyarsky's December 7, 2011 retaliation claim filed with the EEOC. There is no evidence that Harvard, or Karpierz, had any indication of Sklyarsky claim of discrimination when Karpierz issued the March 22, 2012 written warning concerning Sklyarsky's substandard work. *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 642 (7th Cir. 2013) ("The relevant time for knowledge, . . . is when the alleged retaliation took place, not the time the protected activity occurred.").

The first evidence in the record which mentions Sklyarsky's feelings of discrimination appears after Karpiez issued the March 22, 2012 written warning. In Sklyarsky's March 26, 2012 "Complaint about Discriminatory Actions . . ." to Human Resource Manager Domliaja, he expressed that he felt discriminated against. Sklyarsky's March 26, 2012 complaint gives Harvard actual notice of his subjective feeling of discrimination, due to his Ukrainian origin. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 664 (7th Cir. 2006) ("Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of . . . national origin or some other protected class."). Following Sklyarsky's March 2012 complaint he received two suspensions, the first on June 4, 2012 and the second on January 2, 2013, after which he was terminated on January 18, 2013. The Court deems both of Sklyarsky's suspensions and his subsequent termination as materially adverse employment actions which satisfy the second prong of the direct methods test. *See*

*Ellis v. CCA of Tennessee, LLC,* 650 F.3d 640, 650 (7th Cir. 2011) (suspension); *Tomanovich,* 457 F.3d at 664 (discharge). We now turn to the third and final element-causation.

To demonstrate the requisite causal connection in a retaliation claim, a plaintiff must show "that the protected activity and the adverse action were not wholly unrelated." *Hunt-Golliday v. Metropolitan Water,* 104 F.3d 1004, 1014 (7th Cir. 1997). The mere fact that one event comes before another does not prove that the first event cause the second. *Bermudez v. TRC Holdings, Inc.,* 138 F.3d 1176, 1179 (7th Cir. 1998). Other peripheral circumstances must also be present which reasonably suggest that the two events are somehow related to another. *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918 (7th Cir. 2000).

Sklyarsky simply asserts that the close proximity between his engagement in the two protected activities of writing a complaint to the Human Resource Department and Filing a Charge of Discrimination on July 2, 2012, serve as a sufficient basis to establish a causal link. Sklyarsky is mistaken. Sklyarsky does not produce any evidence to suggest that the impetus for any of the alleged disciplinary acts was his engaging in a protected activity. Sklyarsky's speculative arguments regarding the suspicious timing of the imposed discipline is insufficient to establish a causal link. *Sauzek,* 202 F.3d at 918 ("Speculation based on suspicious timing alone, . . . does not support a reasonable inference of retaliation; instead plaintiffs must produce facts which somehow tie the adverse decision to the plaintiff's protected actions.").

Sklyarsky cannot show that "but for" his protected conduct, he would not have been suspended or terminated. Because Sklyarsky has not established a prima facie retaliation claim, it is unnecessary for us to reach the issue of pretext. Harvard's motion for summary judgment is granted. Sklyarsky's motion for summary judgment is denied.

## II. Discrimination in Violation of 42 U.S.C. § 1981

Sklyarsky has brought a claim for national origin discrimination and retaliation under 42 U.S.C. § 1981, in addition to Title VII. The factual allegations underlying Sklyarsky's 42 U.S.C. § 1981 claims are identical to those underlying his Title VII claims. Courts employ the same substantive analysis for discrimination claims brought under either Title VII or 42 U.S.C. § 1981. *Johnson v. Green Bd. of Pension & Health Benfits of the United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013). The Court has previously concluded that Sklyarsky's Title VII claims fails on their merits. Since 42 U.S.C. § 1981 claims are analyzed under the same rubric as Title VII claims, Sklyarsky cannot succeed in his 42 U.S.C. § 1981 discrimination or retaliation claims. Harvard's motion for summary judgment is granted. Sklyarsky's motion for summary judgment is denied.

## III. Harvard's Counterclaim Seeking Sanctions under Rule 11

Harvard has moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on their counterclaim of abuse of the judicial process under Rule 11. Harvard maintains that Sklyarsky has perpetuated his lawsuit in bad faith for the

purpose of obtaining leverage over Harvard to force their acquiescence to his demands. Rule 11(b) requires that an attorney or party "certify to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that any pleading presented to the court is not presented for an improper purpose, that the claims therein have a legally sufficient basis, and the allegations and other factual contentions have evidentiary support." *Jimenez v. Madison Area Tech. College*, 321 F.3d 652, 656 (7th Cir. 2003). "[A] court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose. In particular, a frivolous argument of claims is one that is "baseless and made without a reasonable and competent inquiry." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)).

This case marks Sklyarsky's second attempt to bring suit against an employer alleging national origin discrimination. Sklyarsky sued his previous employer ABM Janitorial Services for essentially the same conduct alleged in the case at bar, discrimination and retaliation under Title VII. *Sklyarsky v. ABM Janitorial Services, Midwest*, 2012 WL 174647 (N.D. Ill. Jan. 18, 2012). The previous case was dismissed when ABM Janitorial Services moved for summary judgment and the district court found that Sklyarsky could not support his claims. *Id.* at *11. Sklyarsky appealed the dismissal of his case and the district court's granting of summary

judgment was affirmed by the Seventh Circuit Court of Appeals. *Sklyarsky v. ABM Janitorial Services, Midwest,* 494 Fed. Appx. 619 (7th Cir. 2012).

The instant record indicates that Sklyarsky's previous foray into Title VII litigation made an impression on him. Sklyarsky threatened both of his supervisors, Stosic and Karpierz, with a lawsuit after they reprimanded him. His threats of suit or legal action were meted out in a predictable pattern after receiving each disciplinary action. Like clockwork, Sklyarsky would receive a disciplinary action and he would turn around and claim that the discipline was a result of discrimination or retaliation, as opposed to the impropriety of his conduct. After reviewing Sklyarsky's rambling and occasionally incoherent letters submitted to Harvard's Human Resource Department and his Union representative, it is apparent that he subjectively believed that he was the victim of discrimination, no matter how misplaced his belief was. Sklyarsky thought he was the target of a grand conspiracy to oppress him, because his supervisors "saw him as their strongest opponent." Sklyarsky's viewpoint has not supported his discrimination and retaliation claims, and his skewed perspective cannot support the imposition of Rule 11 sanctions.

In reviewing Sklyarsky's actions in the instant case and his past forays into Title VII employment discrimination litigation, the Court recognizes a troubling pattern of conduct. Initially, Sklyarsky fails or refuses to perform a specific requirement of his position, as a janitor. Then Sklyarsky's supervisor issues him a reprimand for his failure to perform his job properly. Sklyarsky contests the

legitimacy of the reprimand as being against the requirements of his Union Agreement and he submits the reprimand to the Union. Without fail, the Union declines to pursue the grievance on his behalf. In the absence of a formal Union protest, Sklyarsky scampers to the EEOC to file a national origin discrimination claim, followed by numerous retaliation claims. Sklyarsky's conduct demonstrates that he uses his Ukrainian national origin as an offensive weapon which he wields to excuse his blatant work place violations. The Court warns that any further meritless lawsuits would put Sklyarsky in peril of being placed on the Northern District of Illinois Frequent Filer list of litigants who must meet several requisite thresholds to file a case. The Court denies Harvard's motion for sanctions.

## CONCLUSION

For the aforementioned reasons, Harvard's motion for summary judgment is granted and Sklyarsky's motion for summary judgment is denied. Harvard's motion for sanctions is denied.

_____
Charles P. Kocoras
United States District Judge

July 15, 2014

Dated: _____